IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HARTFORD ACCIDENT AND )
INDEMNITY COMPANY, et al., )
    Appellants, )
)
v. ) Civil Action No. 07-1749
)
GLOBAL INDUSTRIAL ) Bankr. Case No. 02-21626 (JKF)
TECHNOLOGIES, INC. et al., )
)
    Appellees. )

MEMORANDUM and ORDER

Gary L. Lancaster                                                      July 25, 2008
U.S. District Judge

      This is an appeal brought by several groups of insurance companies from two final orders of the Bankruptcy Court. The Insurers object to four findings made by the Bankruptcy Court: (1) that Hartford and Century Indemnity lacked standing to object to confirmation of the plan; (2) that a channeling injunction could be entered as to GIT's silica claims; (3) that assignment of GIT's rights under certain insurance policies to the silica trust was authorized by bankruptcy law; and (4) that the GIT Plan of Reorganization was confirmable under the Bankruptcy Code. We affirm the Bankruptcy Court's findings and conclusions on each of these issues for the reasons set forth below.

I. BACKGROUND

The parties are familiar with the general background of this case and it need not be detailed here. The facts relevant to the issues before us are as follows, and are not in dispute. This appeal originates from two opinions issued by the Bankruptcy Court: (1) a September 21, 2007 Memorandum Order; and (2) a November 13, 2007 Revised Memorandum Opinion on Confirmation of Debtors' Third Amended Plan of Reorganization, with Revised Findings of Fact and Conclusions of Law attached thereto, and accompanying Confirmation Order.

Global Industrial Technologies, Inc. (GIT) is the Debtor in a Chapter 11 bankruptcy proceeding pending in this judicial district. The Bankruptcy Court confirmed GIT's Plan of Reorganization. Among other things, the Plan includes an injunction that channels all silica-related personal injury claims against GIT to a trust. The Silica Trust is to be funded by the proceeds of settlement agreements that GIT has negotiated with certain of its insurers. The Trust will also receive an assignment of rights under certain insurance policies.

Several groups of insurers have appealed. The Objecting Insurers fall into three collective groups - Hartford, Century Indemnity, and AIG. Hartford and Century Indemnity have filed joint briefs. AIG has joined in the arguments raised by those insurers, but has also filed its own briefs. Hartford and

Century Indemnity were not permitted to participate in plan confirmation proceedings before the Bankruptcy Court. AIG is a creditor of GIT and had standing both to participate in the Bankruptcy proceedings and to bring this appeal.

We review the Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo. Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999).

II.   LEGAL STANDARDS and DISCUSSION

   A.   Standing

We must consider two types of standing in this case: standing to appeal to the District Court and standing to participate in plan confirmation proceedings in the Bankruptcy Court.

Appellate standing in bankruptcy cases is limited to "person[s] aggrieved." In re PWS Holding Corp., 228 F.3d 224, 249 (3d Cir. 2000) (citing Travelers Ins. Co. v. H.K. Porter Co., Inc., 45 F.3d 737, 741 (3d Cir. 1995)). A person is aggrieved only if the bankruptcy court's order "diminishes their property, increases their burdens, or impairs their rights." In re Dykes, 10 F.3d 184, 187 (3d Cir. 1993) (citation omitted). Thus, only those "whose rights or interests are directly and adversely affected pecuniarily" by an order of the bankruptcy court may

bring an appeal. Id. (internal quotation marks and citation omitted). The appellate standing requirement is more stringent than the standing to participate requirement. In re Combustion Engineering, Inc., 391 F.3d 190, 215 (3d Cir. 2004).

In order to establish standing to participate in a bankruptcy case a person must meet Constitutional and prudential requirements, as well as achieve "party in interest" status. In order to satisfy the requirements of Constitutional, or Article III, standing, a person must show: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) the substantial likelihood that the requested relief will remedy the alleged injury in fact. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); In re Mid-Valley, Inc., 305 B.R. 425, 431 (Bankr. W.D. Pa. 2004) (internal quotation marks and citations omitted). Once a person has met the Constitutional requirements, a court may still refuse to exercise jurisdiction on prudential grounds if: (1) the person is asserting the rights of a third party; (2) the person alleges a generalized grievance; or (3) the person asserts an injury outside the zone of interest the statute was designed to protect. Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm., 321 B.R. 147, 161 (D.N.J. 2005) (citing Warth v. Seldin, 422 U.S. 490, 499 (1975) and Benjamin v. Aroostook Medical Ctr., Inc., 57 F.3d 101, 104 (1st Cir. 1995)).

4

Lastly, to be a party in interest, a person must have "a sufficient stake in the proceeding so as to require representation." 11 U.S.C. §§ 1109(b), 1128(b); In re Amatex Corp., 755 F.2d 1034, 1042 (3d Cir. 1985). Generally speaking, a "sufficient stake" indicates an interest that is directly or adversely affected by the bankruptcy proceeding. This test is more exacting than the Constitutional standing requirement. In re Fuller-Austin Insulation, 1998 WL 812388, *3 (D. Del. Nov. 10, 1998) (citing Kane v. Johns-Mansville Corp., 843 F.2d 636, 641-42 & n.2 (2d Cir. 1987)).

### 1. Appellate Standing

As discussed above, three groups of insurers have appealed from the Bankruptcy Court's orders; Hartford, Century Indemnity and AIG. GIT[1] contends that Hartford and Century Indemnity do not have standing to appeal from any orders of the Bankruptcy Court. GIT does not challenge AIG's standing to appeal. Because AIG has advanced the same arguments on appeal as Hartford and Century Indemnity, via joinder, we need not decide the issue of Hartford and Century Indemnity's appellate standing. See

---

[1] For ease of reference, we use "GIT" to refer collectively to the appellees. In fact, the Debtors, the Official Committees of Asbestos Creditors and Unsecured Trade Creditors, and the Legal Representatives for Future Asbestos and Silica Claimants filed joint briefs as appellees.

McConnell v. Fed. Election Comm'n, 540 U.S. 93, 233 (2003); Watt v. Energy Action Educ. Found., 454 U.S. 151, 160 (1981). Regardless of whether or not Hartford and Century Indemnity have standing to bring this appeal, we must still address all issues raised by AIG, whose appellate standing is unchallenged. As such, we proceed to consider all four issues raised on appeal.

### 2. Bankruptcy Standing

One of the four substantive issues raised in this appeal is whether the Bankruptcy Court erred in finding that Hartford and Century Indemnity lacked standing to participate in plan confirmation proceedings before the Bankruptcy Court. On this standing issue, the Bankruptcy Court concluded that:

> In the case before us, the Insurers have suffered no injury in fact and the injury they assert will occur in the future is not imminent. All coverage defenses and contractual rights of insurers are preserved [by the insurance neutrality provisions]. They are not required, and have not been asked, to contribute anything to the APG Silica Trust.

In re: GIT, 02-21626 (Bankr. W.D. Pa.), Sep. 21, 2007 Memorandum Opinion, at p. 7.

In the Bankruptcy Court, and here, the Objecting Insurers argue that they had standing to participate in the plan confirmation process because the GIT Plan subjected them to an "inflated and accelerated indemnification obligation," and

precluded them from raising a defense to coverage under the anti-assignment provisions[2] of the policies. They also contend that the GIT Plan forces them to defend meritless silica claims that would not have existed outside of bankruptcy. The Insurers allege that these injuries are sufficient to satisfy all three of the tests applicable to determine standing to participate before the Bankruptcy Court. Like the Bankruptcy Court, we disagree.

The Objecting Insurers have not cited any controlling precedent granting an insurer standing to participate in plan confirmation proceedings under facts similar to this case. Although some bankruptcy, and district, courts have reached this result, no such cases are controlling. However, one is worth mentioning. In the Skinner bankruptcy, this court affirmed the bankruptcy court's finding that the insurers had a right to participate in plan confirmation proceedings. Hartford Accident and Indemnity Corp. v. Am. Capital Equipment, 06-0891 (W.D. Pa.), Aug. 25, 2006 Memorandum and Opinion. In that case, the

---

[2] We address the Objecting Insurers' argument regarding the anti-assignment clause on the merits in Section II.C. of this opinion.

insurance policies were the only asset[3] owned by the debtor. The policies would be the only income generating resource after the bankruptcy case was closed; there would be no operational "reorganized debtor" post-bankruptcy. Instead, surcharges from insurance monies collected by asbestos claimants would be paid to a common fund, which funds would be used to, among other things, pay the debtor's trade creditors. The decision by this court, and the bankruptcy court, to grant the insurers standing was based on the unique facts of that case. It did not establish a general rule that the type of alleged injuries asserted by the Objecting Insurers in this case are sufficient to confer standing.

Here, the Silica Trust will be funded by insurance settlement proceeds totaling at least $35.5 million. Even if the Trust is unable to recover anything under the assigned policies, the Silica Trust will still exist, and be funded by the settlement proceeds. Whether any insurer will be obligated to pay the Trust anything under the assigned policies will be decided in a separate action under the terms of the particular policy, in accordance with the insurance neutrality provisions of the Plan. Even the Objecting Insurers acknowledge this fact. Certain Appellants' Brief on Appeal [doc. no. 11] at p. 43 ("the

---

[3] The debtor also held $50,000 in cash and documents, but neither the Bankruptcy Court, nor the District Court, considered those assets significant to its standing analysis.

8

APG Silica Trust will still have to establish its right to coverage under the policies"). The insurers can assert their coverage defenses[4] in these subsequent actions. However, those defenses to coverage do not confer standing to participate in plan confirmation proceedings. The Bankruptcy Court's legal and factual findings on this issue are not erroneous, and are affirmed by this court.

### B. Section 105 Injunction

In confirming GIT's Plan of Reorganization, the Bankruptcy Court concluded that an injunction channeling silica-related personal injury claims to a trust was necessary to GIT's reorganization. Under section 105(a) of the Bankruptcy Code, a court may issue injunctive relief where "unusual circumstances" exist, such as in cases involving "settlement of massive liabilities against debtors and co-liable parties." In re Continental Airlines, 203 F.3d 203, 213 (3d Cir. 2000). The Court of Appeals for the Third Circuit has adopted a "flexible approach" in determining when such circumstances exist, and has directed courts to consider "fairness, necessity to the reorganization, and specific factual findings to support these conclusions." Id. at 212. The Bankruptcy Court considered each of the factors set forth by the Court of Appeals in Continental

---

[4]  Other than a defense based on the anti-assignment provisions. See Section II.C.

Airlines, and discussed the relevant evidence submitted by both the proponents of and the objectors to the proposed plan. We see no error in the Court's findings, either legal or factual.

There is no support for the Objecting Insurers' contention that the Bankruptcy Court applied the wrong legal standard in determining whether an injunction was necessary. The Bankruptcy Court did not confine its analysis to whether the particular plan being proposed was viable without the injunction, as the Objecting Insurers contend. In addition, any allegations that the silica injunction does not comply with the specific requirements of section 524(g) of the Bankruptcy Code are misplaced. That section applies only to injunctions that channel asbestos claims to a trust. The Bankruptcy Court entered this injunction under section 105(a) to address silica-related liabilities.

Nor are any of the Objecting Insurers' attacks on the Bankruptcy Court's factual findings sustainable. The Bankruptcy Court's opinion carefully addressed the evidence submitted by GIT regarding its silica liability, and GIT's ability to financially address it in the absence of a channeling injunction. Contrary to the Objecting Insurers' contentions here, GIT's evidence in support of the injunction, and the Bankruptcy Court's findings, did account for both diagnoses made by doctors criticized by Judge Jack in the MDL case, and changes in the tort landscape.

Moreover, the Bankruptcy Court pointed out that while the Objecting Insurers' expert, Dr. Martin, faulted GIT's silica claims expert for including claims diagnosed by certain doctors, Dr. Martin's own firm had included claims diagnosed by those same doctors in submissions made in a bankruptcy case pending in Delaware. In re: GIT, 02-21626 (Bankr. W.D. Pa.), Nov. 13, 2007 Memorandum Opinion, at p. 28. Similarly, the Bankruptcy Court detailed the concessions that the Objecting Insurers' financial expert, Mr. Dooley, made. Mr. Dooley ultimately recognized that GIT's silica liability would, in fact, be substantial even under the most conservative estimates and would be problematic to, and risky for, reorganized GIT in the absence of an injunction. In re: GIT, 02-21626 (Bankr. W.D. Pa.), Nov. 13, 2007 Memorandum Opinion, Exhibit 1 at ¶¶ 218-222. These are just a few examples of the care and attention that the Bankruptcy Court gave to the evidence submitted on the issue of the necessity of a silica injunction.

There is no error in the Bankruptcy Court's factual findings or legal conclusions. Instead, the Objecting Insurers simply disagree with the result reached by the Bankruptcy Court. However, that is not a basis for disturbing the Bankruptcy Court's rulings on appeal.

C.  Anti-Assignment Provisions

In the Bankruptcy Court, the Objecting Insurers objected to GIT's Plan on the ground that assignment of their insurance policies to the Silica Trust violated the policies' anti-assignment clauses. However, the Bankruptcy Court found that "the assignment is authorized by law." In re: GIT, 02-21626 (Bankr. W.D. Pa.), Sep. 21, 2007 Memorandum Order, at p. 2. The Bankruptcy Court cited to Pennsylvania Supreme Court cases and opinions from other bankruptcy and federal district courts addressing the validity of anti-assignment clauses. However, the only controlling precedent to which the Bankruptcy Court cited was the Court of Appeals for the Third Circuit's opinion in In re Combustion Engineering, 391 F.3d 190 (3d Cir. 2004). We find that we are bound by this bankruptcy law authority.

In Combustion Engineering, certain insurers objected to a pre-packaged bankruptcy plan that assigned their policies to an asbestos trust. The Court of Appeals found that the assignment was authorized by the Bankruptcy Code. Id. at 218-19. The Objecting Insurers are correct that the Court of Appeals relied principally on section 541 in doing so. And they are correct that section 541 addresses the transfer of property from the pre-petition debtor to the post-petition debtor's estate. However, the Court of Appeals also cited section 1123(a)(5), which

addresses the transfer of property out of the estate and to another entity.  Id. at 218-19 & n.27.

Regardless, in Combustion Engineering, the insurers were not objecting to the fact that their policies were included as part of the debtor's estate after the debtor filed its petition. Instead, they were objecting to a proposed plan that thereafter moved the polices from the estate to the asbestos trust, on the ground that the transfer violated the anti-assignment clauses in the policies.  The Court of Appeals overruled that objection, finding that the Bankruptcy Code allowed the transfer.  The Objecting Insurers do nothing more than make that same objection here.

The Court of Appeals's opinion in Combustion Engineering addresses the exact same objection raised by the Objecting Insurers and we are confined to reach the exact same result. Therefore, we find that as a matter of bankruptcy law, assignment of the insurance policies to a personal injury trust does not violate anti-assignment clauses in those policies.  The Bankruptcy Court's ultimate legal conclusion on this point was dictated by controlling bankruptcy law precedent,[5] and will not

---

[5]  The Court of Appeals for the Third Circuit's recent decision in SLW Capital, LLC v. Manraray-Ruffin, Case No. 05-4790 (June 24, 2008), is not controlling.  Rather, Combustion Eng'g remains the controlling precedent as to the validity of and procedural requirements regarding anti-assignment clauses in bankruptcy cases.

be disturbed on appeal. As such, we need not reach any of the other arguments raised by the Objecting Insurers as to this issue.

### D.  Confirmation of the Plan

Finally, as a separate argument, AIG claims that the Bankruptcy Court erred in confirming the GIT Plan because it was nothing more than a scheme to obtain votes in favor of plan confirmation in exchange for paying worthless silica claims. This theory is found throughout the Objecting Insurers' briefs and is premised on the oft-repeated proposition that GIT faces no silica liability outside of bankruptcy. The Objecting Insurers made this same argument to the Bankruptcy Court. We find no support for this proposition.

Although the Objecting Insurers may question the viability of particular silica claims, the expert testimony admitted by the Bankruptcy Court, including from the Objecting Insurers' own expert, indicated that GIT's silica liability is real, and if nothing else, will impose significant defense costs on GIT post-bankruptcy. The fact that the Objecting Insurers have theories of defense to individual claims does not mean that the claims do not exist. It is undisputed that GIT faced silica claims before it filed for bankruptcy, and will face them after it emerges therefrom.

The Bankruptcy Court's findings of fact on this issue are not clearly erroneous, and we find no legal error in the Bankruptcy Court's decision to confirm the GIT Plan on this ground.

### III.     CONCLUSION

Because we find no clear error in the Bankruptcy Court's factual findings, nor, upon de novo review, any error in its legal conclusions, we affirm all four of the challenged rulings.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARTFORD ACCIDENT AND INDEMNITY COMPANY, et al., Appellants, | )<br>)<br>)<br>) |
| v. | ) Civil Action No. 07-1749 |
| NORTH AMERICAN REFRACTORIES COMPANIES, et al., Appellees. | ) Bankr. Case No. 02-21626 (JKF)<br>)<br>)<br>) |

ORDER

AND NOW, this 25 day of July, 2008, IT IS HEREBY ORDERED that the September 21, 2007 Memorandum Order and the November 13, 2007 Revised Memorandum Opinion on Confirmation of Debtors' Third Amended Plan of Reorganization issued by the U.S. Bankruptcy Court for the Western District of Pennsylvania in Bankruptcy Case Number 02-21626, are AFFIRMED;

IT IS FURTHER ORDERED that, because all parties have had a full and fair opportunity to raise any and all objections to the Bankruptcy Court's confirmation order, and channeling injunctions, the Court AFFIRMS the November 13, 2007 Revised Order Confirming Third Amended Plan of Reorganization as to GIT;

IT IS FURTHER ORDERED that the December 18, 2007 order of this court entered in Misc. No. 07-0319 is VACATED; and

IT IS FINALLY ORDERED that the Clerk of Court is directed to mark Misc. Action No. 07-0319 CLOSED, as this order affords the relief requested in that case.

BY THE COURT:

_____, J.

cc:   The Honorable Judge Fitzgerald
      All Counsel of Record